MAYOR AND CITY COUNCIL OF BALTIMORE ET AL. *v.* WILLIAM E. KOONS, INC. ET AL.

[No. 49, September Term, 1973.]

*Decided November 8, 1973.*

The cause was argued before MURPHY, C. J., and BARNES, SINGLEY, SMITH, DIGGES and LEVINE, JJ.

*Richard M. Hartman, Special Assistant City Solicitor,* with whom were *George L. Russell, Jr., City Solicitor,* and *Joseph S. Matricciani, Assistant City Solicitor,* on the brief, for appellants and cross-appellees.

*Eugene Hettleman* for appellees and cross-appellants.

MURPHY, C. J., delivered the opinion of the Court.

Section 103 of the Baltimore City Housing Code (Housing Code) [1] has, as its avowed purpose, the establishment of "basic minimum requirements, standards and conditions essential for the protection of the health, safety, morals and general welfare of the public and of the owners and occupants of dwellings in the City of Baltimore; . . ." It is the further purpose of the Housing Code, set forth in § 103, "to establish minimum standards governing the condition, use,

---

1. The Housing Code was enacted by Ordinance No. 902, approved December 22, 1966.

operation, occupancy and maintenance of dwellings and other structures, and the utilities, facilities and other physical components, things and conditions to be supplied to dwellings in order to make dwellings safe, sanitary and fit for human habitation . . . ." Section 401 of the Housing Code empowers designated officials of the City to act as a committee (the Committee) "to make such rules and regulations as they may deem proper and necessary for the administration and enforcement of this Code and the accomplishment of the purposes set forth in Section 103 hereof."

Section 612 of the Housing Code requires that all dwellings in the City be equipped with heating facilities meeting specified requirements; the section provides that all such heating facilities must be "capable of safely and adequately heating all habitable rooms, bathrooms and water closet compartments located therein to a temperature of at least seventy (70) degrees Fahrenheit . . ." and that "[e]ither central or space heating facilities may be used." Section 614, dealing with space heating units, states in relevant part:

> "Every space heating unit . . . shall: * * * be properly connected to an approved flue or vent unless the appliance has been approved by the Building Inspection Engineer and the Chief of the Fire Department as one not requiring venting; * * * be provided with all required automatic or safety devices and be installed and operated in the manner required by the laws, ordinances, rules and regulations of the City of Baltimore. * * * An approved unvented gas-fired space heater shall be unacceptable if installed in a room or enclosed space where the input rating exceeds thirty (30) B.T.U. per hour per cubic foot of room or space. After the effective date of this ordinance no unvented gas-fired space heaters may be installed in a room used for sleeping purposes."

To enforce § 614 of the Housing Code, the Committee, on

September 29, 1970, acting pursuant to the authority vested in it by § 401, adopted Regulation 5 which provided:

> "No unvented, gas-fired space heating unit other than ornamental gas logs meeting the conditions set forth below, may be installed or operated in any dwelling, dwelling unit or rooming unit. Existing units must be disconnected from the gas lines that supply them and these gas lines must be capped. Ornamental gas logs may be installed and existing ones may be kept in use in any dwelling unit or dwelling heated by a legal heating unit provided that these logs are located only in vented fireplaces in rooms not used for sleeping purposes."

The appellees, owners of properties in Baltimore City containing unvented gas-fired space heaters, were threatened with criminal prosecution by officials of the City if they refused to remove their unvented, gas-fired space heaters in compliance with Regulation 5. They filed a bill of complaint in the Circuit Court of Baltimore City seeking a declaratory judgment determining their right to maintain their units for heating purposes, and to enjoin the City from instituting or maintaining criminal prosecutions against them. The court held that Regulation 5 was invalid as it "exceeds the scope of Section 614 . . . in that it permits an unconstitutional taking of private property without due process of law . . . ." The court noted that approval of unvented, gas-fired space heaters under the provisions of § 614 must be made in accordance with the purposes of the Code and based on reasonable, established standards. It concluded that any rejection of existing heaters must be in compliance with an acceptable procedure, one including prior inspection with a right of review to the administrative agency, the Committee, or the courts. In its decree, the court declared that unvented, gas-fired space heaters were not illegal *per se,* and enjoined the City from maintaining criminal prosecutions against the appellees. No appeal was taken from the court's decree.

On August 4, 1971, the Committee adopted Amended Regulation 5, paragraph 1 of which states:

"1) An unvented gas-fired space heater shall not be used as a primary heating device in any room in a dwelling or rooming unit."

The appellees, again threatened with criminal prosecution, filed a petition to hold the City and the Commissioner of Housing and Community Development (a member of the Committee) in contempt for violating the court's decree; the petition sought payment of reasonable attorney's fees, a declaration that Amended Regulation 5 was illegal, and an order enjoining the enforcement of the Regulation. At the conclusion of a hearing held on the petition, the court held that the amended Regulation bore no "significant difference" from the original regulation and was illegal and void in that it exceeded the Committee's rule-making power by prohibiting the use of unvented, gas-fired space heaters as primary heating devices — a use expressly permitted by §§ 612 and 614 of the Housing Code. The court found the City and Commissioner "technically in contempt" of its earlier decree but declined to award an attorney's fee to appellees' counsel. From a decree so declaring, the City appealed. Appellees filed a cross-appeal, claiming that the court was in error in failing to allow an attorney's fee to their counsel.

Sections 612 and 614 of the Housing Code permit the use of unvented, gas-fired space heaters as "primary" heating devices. Section 612 permits space heaters alone, vented or unvented, to be used to heat a dwelling. That use is subject to the further restrictions of section 614 which limits the use of unvented gas-fired space heaters to "approved," stationary heaters, installed in rooms not used for sleeping where the input rating is less than 30 B.T.U. per hour per cubic foot of room or space. Section 105 of the Code defines the term "approved" to mean ". . . accepted as satisfactory by the appropriate City authorities as being in accordance with the requirements of this Code . . . ."

The Committee contends that it is the "appropriate" city authority within the contemplation of the Housing Code and that § 614 empowers it to approve or disapprove the use of

unvented gas-fired space heaters. Although the City did not appeal from the decree holding Regulation 5 invalid, it now argues that there are significant differences between the amended Regulation and its predecessor. It contends that the amended Regulation does not contemplate the ". . . entire removal of gas-fired unvented heaters, but the use of such heaters only in conjunction with a system which is safe." It argues that "[w]hile the original regulation completely banned such heaters, the new regulation provided that such space heaters could be used under circumstances considered safe for the occupants . . . [and that] the regulation, as amended, was intended to set forth such standards as would allow the use of space heaters in approved circumstances, and for the inspection of space heaters, all as required by the original memorandum opinion." The City identifies the issue on appeal to be whether the Committee exceeded the power delegated to it in enacting the amended regulation, and relying on *Givner v. Commissioner of Health*, 207 Md. 184, 113 A. 2d 899 (1955) urges that we not substitute our judgment for that of the Committee if that question is "fairly debatable." We do not think that the question is "fairly debatable." The Committee, in setting standards by regulation for such approval, must be guided by the purposes of the Housing Code stated in § 103. It concluded that these heaters could not safely be used alone to fulfill the requirements of § 612 and prohibited their use as "primary" heating devices. The Committee, acting to achieve the purposes of the Code, may issue regulations designed to protect the health and safety of owners and occupants of city dwellings. It cannot, however, override the legislative determination that unvented, gas-fired space heaters are not *per se* unsafe for use as primary heating devices to fulfill the requirements of § 612. This fundamental rule is well stated in 1 Am. Jur. 2d *Administrative Law* § 132 (1962):

> "A legislatively delegated power to make rules and regulations is administrative in nature, and it is not and cannot be the power to make laws; it is only the power to adopt regulations to carry into

> effect the will of the legislature as expressed by the statute. Legislation may not be enacted by an administrative agency under the guise of its exercise of the power to make rules and regulations by issuing a rule or regulation which is inconsistent or out of harmony with, or which alters, adds to, extends or enlarges, subverts, or impairs, limits, or restricts the act being administered."

Rules and regulations adopted by an administrative agency must be reasonable and consistent with the letter and policy of the statute under which the agency acts. See *Farber's, Inc. v. Comptroller,* 266 Md. 44, 291 A. 2d 658 (1972); *Comptroller v. Rockhill, Inc.,* 205 Md. 226, 107 A. 2d 93 (1954); *John McShain, Inc. v. Comptroller,* 202 Md. 68, 95 A. 2d 473 (1953). The Committee may not prohibit by regulation that which is permitted by the Housing Code. See *Pressman v. Elgin,* 187 Md. 446, 50 A. 2d 560 (1947).

That part of the court's decree declaring Amended Regulation 5 null and void will, therefore, be affirmed. We shall vacate, however, that part of the decree adjudging the City and the Commissioner of Housing and Community Development "technically in contempt of court." Appellees admit that their only purpose in bringing the contempt action was to expediently continue the previous suit:

> "In order to attack the validity of this new Regulation 5, we have done so in the form of a petition asking that the Respondent be held in contempt.
>
> There is no intention on my part, or any feeling that that relief is what we are petitioning — simply a question of expediency in pleadings in order to continue the previous suit in which we had most everything set forth."

The City's threatened institution of criminal prosecution of the appellees, made after what we deem a good faith attempt to restructure its rule consistent with the court's earlier decree does not in our judgment constitute a

238

contempt. We, therefore, find no merit in the claim of appellees that their counsel is entitled to an attorney's fee for instituting the contempt proceedings.

> *Decree affirmed except as to that part thereof adjudicating appellants in contempt of court, which part is hereby vacated; costs to be paid by appellants.*